Trenton Kashima (CA SBN No. 291405)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
402 West Broadway St., Suite 1760
San Diego, CA 92101
Tel: (619) 810-7047
tkashima@milberg.com

*Attorney for Plaintiff*

*(Additional Counsel listed on Signature Page)*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERETT SCOTT, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>RIVIANA FOODS, INC.,<br><br>                    Defendant. | Case No. 1:25-cv-00735-JLT-CDB<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.     Plaintiff Everett Scott ("Plaintiff") individually and on behalf of all others similarly situated brings this First Amended Class Action Complaint against Defendant Riviana Foods, Inc. ("Riviana Foods" or "Defendant") for Defendant's reckless, and/or intentional practice of failing to disclose the presence of arsenic and cadmium (collectively "Heavy Metals") in its Mahatma Brown Whole Grain Rice (the "Product").

2.     This action seeks both injunctive and monetary relief on behalf of the proposed Class (as defined herein), including requiring full disclosure of all such substances on the Product's packaging and restoring monies to the members of the proposed Class, who would not have purchased the Product had they known that it contained (or was at risk of containing) the Heavy Metals and/or would not have paid a premium price for the Product had they known the Product contained Heavy Metals.

3.     Plaintiff alleges the following based upon personal knowledge, as well as investigation by his counsel as to himself, and as to all other matters, upon information and belief.  Plaintiff believes substantial evidentiary support exists for the allegations set forth herein, which will become available after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

4.     Reasonable consumers expect the rice products they purchase for their individual and family consumption will not be contaminated (or has a material risk of being contaminated) with Heavy Metals, substances that are known to accumulate in the body and pose significant and dangerous health consequences.

5.     Consumers lack the scientific knowledge necessary to determine whether Defendant's Product does in fact contain Heavy Metals, or to ascertain the true nature of the ingredients and quality of the Product.  Accordingly, reasonable consumers must and do rely on Defendant to: (1) know what its Product contains;

(2) regularly test the Product to confirm its composition; and (3) properly and fully disclose those contents to consumers prior to purchase. Product contents, particularly contents like Heavy Metals, are material to a reasonable consumer's purchasing decisions.

6. Defendant is involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the Product throughout the United States, including in this District.

7. Defendant fails to disclose on its packaging that the Product contains (or has a material risk of containing) Heavy Metals.

8. No reasonable consumer would expect, suspect, or understand that the Product contains or has a material risk of containing Heavy Metals.

9. Defendant fails to disclose to consumers that the Product contains (or has a material risk of containing) Heavy Metals. Nowhere on the Product's packaging is it disclosed that it contains (or has a material risk of containing) Heavy Metals (hereinafter collectively referred to as "Omissions"). It was only through testing conducted that the general public became aware of the Heavy Metal content in Defendant's Product.

10. Independent testing has detected the presence of cadmium and inorganic arsenic in the Product. Inorganic arsenic is significantly more toxic than its organic counterpart and is known to cause lung, bladder, and skin cancer by the State of California. Inorganic arsenic is also known to cause birth defects or other reproductive harm.

11. Lab testing found that samples of the Product could contain up to 155 parts per billion of inorganic arsenic and 25.9 parts per billion of cadmium.[1] Indeed, this same lab testing singled out Defendant's Mahatma Brown Whole Grain Rice as

---

[1] What's in your family's rice?: Arsenic, Cadmium, and Lead in Popular Rice Brands— Plus 9 Safer Grains to Try (*available at* https://hbbf.org/sites/default/files/2025-05/Arsenic-in-Rice-Report_May2025_R5_SECURED.pdf), at p. 30.

AMENDED CLASS ACTION COMPLAINT

one of the four brands with the highest arsenic levels, with inorganic arsenic levels (the more toxic form of arsenic).[2]  This is much higher than the average levels of Heavy Metals found in Defendant's competitors.  Indeed, this study found that the average amount of inorganic arsenic in rice was 84.8 ppb and average amount of cadmium levels were 18.8 ppb.[3]  Accordingly, based on Defendant's Omissions, consumers are deceived into purchasing an inferior and more dangerous product than its competitors.

12.    Based on the Omissions, no reasonable consumer had any reason to know, suspect, or expect that the Product contained Heavy Metals.  Furthermore, reasonable consumers like Plaintiff, who were purchasing the Product for consumption by themselves and their families, would consider the presence (or risk) of Heavy Metals to be a material fact when considering whether to purchase the Product.  Accordingly, Plaintiff and other reasonable consumers would not have purchased the Product, purchased other brands with lower Heavy Metals levels, or would have paid substantially less for it but for the Omissions.

13.    Defendant knows its customers trust the quality of its Product and would not expect the Product to contain or have a material risk of containing Heavy Metals.  Defendant also knows that reasonable consumers seek out and wish to purchase products with ingredients free of toxins or contaminants, and that these consumers will pay more for products they believe meet these standards.  Defendant further knows that reasonable consumers would not knowingly consume, or feed to their families, products that contain Heavy Metals.

14.    Defendant knew the consumers to whom it markets the Product would find its Omissions material and that it was in a special position of public trust to those consumers.

---

[2] *Id.*, at p. 17.
[3] *Id.*, at p. 8, n. 9.

AMENDED CLASS ACTION COMPLAINT

15.     The Omissions are deceptive, misleading, unfair, and/or false because the Product contains undisclosed Heavy Metals.

16.     The Omissions allowed Defendant to capitalize on, and reap enormous profits from, reasonable consumers like Plaintiff who paid a premium price for the Product that omitted material information as to the Product's true quality and value. Reasonable consumers, including Plaintiff, paid more for the Product than they would have had they known the truth about the Product, and Defendant continues to wrongfully induce consumers to purchase the Product.

17.     Plaintiff brings this proposed consumer class action individually and on behalf of all other members of the Class (as defined herein), who, during the Class Period, purchased for use and not resale any of Defendant's Product.

## JURISDICTION AND VENUE

18.     This Court has original jurisdiction over all causes of action herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and more than two-thirds of the Class reside in states other than the state in which Defendant is a citizen and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d)(2) do not apply.

19.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of California and contracts to supply goods within the state of California, such that it has had continuous and systematic contacts with the state of California, Defendant places its Product in the stream of commerce targeted at California, and the injury alleged herein occurred when Plaintiff purchased the Product in California.

20.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiff suffered injury as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and because Defendant conducts substantial business in this District.

## PARTIES

**Plaintiff Scott**

21.    Plaintiff Everett Scott ("Scott") is, and at all times relevant hereto has been, a citizen of the state of California.  He purchased the Product, from Walmart and Bargain Market stores in Ridgecrest, California.

22.    Scott purchased this Product beginning in approximately July 2022. Scott last purchased the Product shortly before he learned of the issues with Heavy Metals in the Product in March 2025.

23.    Scott believed that he was purchasing a high-quality rice product from Defendant.  Prior to purchasing the Product, Scott saw and relied upon the packaging of the Product.  During the time he purchased and ate the Product, and due to the Omissions by Defendant, he was unaware the Product contained (or had a material risk of containing) any level of Heavy Metals and/or other undesirable toxins or contaminants and would not have purchased the Product if that information had been fully disclosed.  Scott would be willing to purchase the Product in the future if he could be certain that it did not contain (or have a material risk of containing) Heavy Metals.

**Defendant Riviana Foods**

24.    Defendant Riviana Foods has a principal address in Houston, Texas. Defendant is involved in the production, marketing, distribution, and sale of the rice product and places the Product in the stream of commerce directed at California and the United States.

25.    During the relevant time, Defendant controlled the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of its Product.  Defendant therefore had control over how to label its Product as to its contents.

26.    Defendant has been involved in the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of the

AMENDED CLASS ACTION COMPLAINT

Product throughout the United States, including in this District. It has done so continuously throughout the Class Period. Defendant knowingly created, allowed, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive packaging and related marketing for the Product that did not disclose the presence of Heavy Metals. Defendant is also involved in the sourcing of ingredients, manufacturing of products, and conducting of all relevant quality assurance protocols, including testing of both the ingredients and finished product.

27.    Plaintiff relied upon the material Omissions missing from the Product's packaging, which was prepared, reviewed, and/or approved by Defendant and its agents and disseminated by Defendant and its agents through packaging that contained the Omissions. The Omissions were nondisclosed material content that a reasonable consumer would consider important in purchasing the Product.

## FACTUAL ALLEGATIONS

28.    Consumers have become increasingly concerned about the effects of dangerous contaminants in food products that they and their family members consume. Companies, such as Defendant, have capitalized on consumers' desire for safe products, and indeed consumers are willing to pay, and have paid, a premium for such food products.

29.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains Cadmium and Arsenic, or other unsafe and unhealthy substances, especially at the point of sale. Therefore, consumers must and do rely on Defendant to truthfully and honestly report what its Product contains on its packaging or label. Indeed, testing for toxic heavy metals requires expensive and destructive scientific testing. Given the relatively low price of the Product, no reasonable consumer would engage in such testing before purchasing the Product.

30.    However, public reports and articles recently revealed that Defendant's Product contains unsafe levels of Cadmium and Arsenic.[4] Indeed, these levels of

---

[4] https://www.cnn.com/2025/05/15/health/arsenic-cadmium-rice-wellness

AMENDED CLASS ACTION COMPLAINT

Cadmium pose serious health risks. As Defendant noted, despite a serving of its Product being only 45 grams, representing only 8.5 percent (or 170 calories) of the 2,000 daily calories that the FDA uses to calculate daily values on nutritional labels, Defendant's Product contributes more than 25 percent of the Maximum Allowable Dose Levels ("MADLs") for reproductive toxicants for cadmium and approximately 70 percent of the No Significant Risk Levels ("NSRLs") for inorganic arsenic.[5] However, 45 grams of rice is only the equivalent of equivalent of approximately 3/4 cup of cooked rice. Studies show that, on average, consumers of rice eat just over a cup of cooked rice per day.[6] This means that the consumer of rice can eat the vast majority of their MADLs of cadmium, and nearly all of their NSRLs for inorganic arsenic from consuming an average daily amount of Defendant's Product (which only represents the amount of food eaten as a side dish for a meal). Despite these risks, Defendant failed to include any disclosures regarding Cadmium and Arsenic levels on its Product.

31. Defendant knew and could not have been unaware of the Cadmium and Arsenic in the Product. By law, Defendant has a responsibility to implement controls to significantly minimize or prevent exposure to toxic heavy metals in the Product. Defendant manufactures and sources the ingredients contained within the Product.[7] Defendant tests the Product for quality control purposes, including the levels of toxic heavy metal such as Cadmium and Arsenic contained therein. Additionally, Defendant receives Certificates of Analysis, and other certifications, from the suppliers of the ingredients used to create the Product. These documents will also disclose the levels of chemicals and toxic heavy metals, such as Cadmium and Arsenic, contained in each constituent ingredient. These documents and its own

---

[5] ECF No. 6-1 at p. 19.

[6] https://www.usarice.com/docs/default-source/arsenicfacts.com/jada-rice-consumption-article-9-28-09.pdf, at p. 1722.

[7] For example, Defendant has an obligation to control and test for known or reasonably foreseeable hazards, such as natural toxins. *See* 21 C.F.R. §§ 117.130-35.

testing alert Defendant to the presence of any toxic heavy metals, such as Cadmium and Arsenic, in the Product. Accordingly, Defendant has exclusive knowledge of the Cadmium and Arsenic levels in the Product, and Plaintiff and the Class could not have known about this risk.

32.     Consumers reasonably rely on the marketing and information on Defendant's labels in making purchasing decisions. By marketing the Product as containing Rice, and not disclosing the presence of Cadmium and Arsenic, Defendant misleads reasonable consumers.

33.     Despite Defendant's knowledge of Cadmium and Arsenic in the Product, Defendant failed to provide any warning on the place that every consumer looks when purchasing a product—the packaging or labels—that the Product contains Cadmium and Arsenic.

34.     Defendant's concealment was material because people are concerned with what is in the food that they are putting into their bodies, as well as parents and caregivers being concerned with what they are feeding to the children in their care. Consumers such as Plaintiff and the Class Members are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the food packaging they buy. Defendant knows that if it had not omitted that the Product contained unsafe levels of Cadmium and Arsenic and that the Product was not safe or healthy for consumption then Plaintiff and the Class would not have paid a premium for the Product (or purchased it at all).

35.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading Omissions.

36.     Defendant's false, misleading, and deceptive Omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

37.     In making the false, misleading, and deceptive Omissions described herein, Defendant knew and intended that consumers would pay a premium for the

8

Product. Had Defendant not made the false, misleading, and deceptive Omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Product they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Product.

38.    Plaintiff and the Class Members all paid money for the Product; however, Plaintiff and the Class Members did not obtain the full value of the advertised Product due to Defendant's Omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for the Product than they would have had they known the truth about the Product.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money because of Defendant's wrongful conduct.

## I.    Defendant Omits Any Mention of Heavy Metals on Its Packaging

39.    Defendant manufactures, designs, tests, packages, labels, markets, advertises, promotes, distributes, and sells its Product throughout the United States, including in California.

40.    Defendant's Product is available at numerous retail and online outlets throughout the United States, including California.

41.    Defendant intentionally omitted the presence or material risk of Heavy Metals in the Product in order to induce and mislead reasonable consumers to purchase the Product and pay a price premium for it.

42.    As a result of the material Omissions, a reasonable consumer would have no reason to suspect the presence of or material risk of Heavy Metals in the Product without conducting his or his own scientific tests (which are time consuming and expensive) or reviewing third-party scientific testing of the Product.

43.    Information regarding the true nature and/or presence of Heavy Metals in the Product was and is in the exclusive possession of Defendant and not available to consumers.  Defendant chose not to disclose such material information to consumers and thus concealed the presence and risk of Heavy Metals in the Product

from Plaintiff and Class members.  Indeed, as a food product, which is to be consumed, consumers expect that the Product will be safe and pure.  Failure to provide safe and pure food is not only a violation of federal and state law, but goes to the central function of a food product.

**II.**     **Due to the Presence and/or Material Risk of the Presence of Heavy Metals in the Product, the Omissions are Misleading**

       **A.**     **Heavy Metals**

44.     Arsenic and cadmium are heavy metals whose harmful effects are well-documented, particularly in children.  Exposure to heavy metals puts children at risk for lowered IQ, behavioral problems (such as attention deficit hyperactivity disorder), type 2 diabetes, and cancer, among other health issues.  Heavy metals also pose health risks to adults.  Even modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions.  These facts underscore the importance of limiting heavy metal exposure and consumption.

45.     Given the negative effects of heavy metals (such as arsenic and cadmium) on child development and adult health, the presence of these substances in food is material to reasonable consumers, including Plaintiff and members of the Class, as it relates to their purchasing decisions.

46.     Defendant knows that the presence (or material risk) of Heavy Metals in its Product is material to reasonable consumers, including Plaintiff and the Class members.

47.     At all times during the relevant period, Defendant knew or should have known the Product included undisclosed levels of Heavy Metals and was not sufficiently tested for the presence and material risk of Heavy Metals.

48.     Defendant's Product included undisclosed levels of Heavy Metals due to Defendant's failure to sufficiently monitor for their presence in the ingredients and finished product.  Defendant was or should have been aware of this risk.

AMENDED CLASS ACTION COMPLAINT

49.    Defendant knew or should have known that Heavy Metals pose health risks to consumers.

50.    Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize the presence of Heavy Metals in the Product to the extent reasonably possible.

51.    Defendant knew or should have known that it owed consumers a duty of care to adequately test for Heavy Metals in the Product and the contributing ingredients.

52.    Based, in part, on Defendant's own representation that it manufactured the Product using the highest standards, Defendant knew or should have known consumers reasonably expect that the Product does not contain (or have a material risk of containing) Heavy Metals.

53.    The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, cadmium, and lead "dangerous to human health."[8]

54.    The FDA has acknowledged that "exposure to these [heavy metals] are likely to have the most significant impact on public health" and has prioritized them in connection with its Toxic Elements Working Group to look at reducing the risks associated with human consumption of heavy metals.[9]

55.    Heavy Metals bioaccumulate in the body, meaning the body cannot excrete the toxins as quickly as they are absorbed and the risk they pose increases over time and can remain in one's body for years.[10]

---

[8] *Staff Report: Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, U.S. House of Representatives Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, Feb. 4, 2021 ("House Report") at 2, available at https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed May 11, 2023).

[9] *Environmental Contaminants in Food*, U.S. Food & Drug Administration, available at https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm (last accessed May 11, 2023).

[10] *Heavy Metals in Baby Food: What You Need to Know*, Consumer Reports, Aug. 16, 2018

56.     Concerns over exposure to Heavy Metals, and the knowledge of such risks associated with exposure, are not a new phenomenon, and Defendant knew or should have known of the risks associated with the presence of Heavy Metals in foods it sells to consumers.[11]

57.     Despite the known risks of exposure to Heavy Metals, Defendant has recklessly and/or knowingly sold the Product without disclosing to consumers like Plaintiff and members of the Class that the Product contains (or has a material risk of containing) Heavy Metals.

**B.     Arsenic**

58.     The Product contains (or has a material risk of containing) arsenic, which can cause respiratory, gastrointestinal, hematological, hepatic, renal, skin, and neurological and immunological effects.[12] Exposure to arsenic can also cause diabetes, atherosclerosis, and cardiovascular disease.[13]

59.     Inorganic arsenic is highly toxic and a known cause of human cancers.

60.     "Studies have shown that consuming products with arsenic over time can lead to impaired brain development, growth problems, breathing problems, and a compromised immune system."[14]

---

(updated Sept. 29, 2021), available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed May 11, 2023).

[11] See e.g., *FDA Compliance Program Guidance Manual: Toxic Elements in Food and Foodware, and Radionuclides in Food – Import and Domestic*, available at http://wayback.archive-it.org/7993/20170404233343/https://www.fda.gov/downloads/Food/ComplianceEnforcement/UCM073204.pdf (last accessed May 11, 2023); *see also* 21 CFR 172, available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/CFRSearch.cfm?CFRPart=172&showFR=1 (last accessed May 11, 2023).

[12] House Report at 10.

[13] J. Christopher States et al., *Prenatal Arsenic Exposure Alters Gene Expression in the Adult Liver to a Proinflammatory State Contributing to Accelerated Atherosclerosis*, PLOS ONE, June 15, 2012, available at https://doi.org/10.1371/journal.pone.0038713 (last accessed May 11, 2023).

[14] Letter to FDA Acting Commissioner Janet Woodcock, signed by Senators Klobuchar, Blumenthal, Leahy, Duckworth, and Booker, June 22, 2021, available at https://www.klobuchar.senate.gov/public/_cache/files/9/9/996f2cad-5295-432b-a543-f69312988a78/37D015A1AC9DDF0E31B341F629469169.6.22.2021-formatted-letter-to-fda-on-

12

61.    Based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and FDA have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulated by the EPA) as a maximum contaminant level.

62.    Moreover, the FDA has set the maximum allowable arsenic levels in bottled water at 10 ppb of inorganic arsenic.[15] The FDA has issued an action level guidance for inorganic arsenic in infant rice cereals of 100 ppb.[16]

C.    **Cadmium**

63.    The Product contains (or have a material risk of containing) cadmium, which is considered a cancer-causing agent.[17]

64.    "[A]ny cadmium exposure should be avoided."[18]  Exposure to even low levels of cadmium over time may build up cadmium in the kidneys and cause kidney disease and bone loss.[19]

65.    Cadmium exposure can affect the gastrointestinal system, as well as lead to hemorrhagic gastroenteritis, liver and kidney necrosis, cardiomyopathy, and metabolic acidosis.[20]

---

baby-food-recall.pdf (last accessed May 11, 2023) (citing *Arsenic and Children*, Dartmouth Toxic Metals Superfund Research Program, 2021, available at https://sites.dartmouth.edu/arsenicandyou/arsenic-and-children/ (last accessed May 11, 2023)).

[15] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post, Feb. 4, 2021, available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed May 11, 2023).

[16] *Inorganic Arsenic in Rice Cereals for Infants: Action Level Guidance for Industry*, FDA, Aug. 2020, available at https://www.fda.gov/media/97234/download#:~:text=The%20action%20level%20for%20inorganic,on%20sampling%20and%20testing%20results (last accessed May 11, 2023).

[17] *Cadmium Factsheet*, Centers for Disease Control and Prevention, available at https://www.cdc.gov/biomonitoring/cadmium_factsheet.html (last accessed May 11, 2023).

[18] M. Nathaniel Mead, *Cadmium Confusion: Do Consumers Need Protection*? Environmental Health Perspectives, Dec. 2010, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last accessed May 11, 2023).

[19] *Id.*

[20] *Cadmium Toxicity: What Health Effects are Associated with Acute High-Dose Cadmium*

13

66. Exposure to cadmium is also linked to cardiovascular disease and cancer.[21]

67. Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at exposure levels common among U.S. children."[22]

68. Cadmium, "displays a troubling ability to cause harm at low levels of exposure."[23] The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.[24]

69. Compounding such concerns is the fact that cadmium has a prolonged half-life as it "sequester[s] in [human] tissue."[25]

## III. The Material Omissions Misled and Deceived Reasonable Consumers

70. The Omissions wrongfully convey to consumers that Defendant's Product is of a superior quality and has certain characteristics that it does not actually possess.

71. Defendant misleadingly causes consumers to believe its Product does not contain Heavy Metals due to the material Omissions, when in fact the Product

---

*Exposure?* Agency for Toxic Substances and Disease Registry, available at https://www.atsdr.cdc.gov/csem/cadmium/Acute-Effects.html (last accessed May 11, 2023).
    [21] M. Nathaniel Mead, *Cadmium Confusion: Do Consumers Need Protection?* Environmental Health Perspectives, Dec. 2010, available at
    https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last accessed May 11, 2023).
    [22] *Is Homemade Baby Food Better? A New Investigation: Tests Compare Toxic Heavy Metal Contamination in Homemade Versus Store-Bought Foods for Babies*, Healthy Babies Bright Futures, Aug. 2022, at 69 ("Healthy Babies Bright Futures Report"), available at https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/ 2022-08/StoreVsHomemade_2022.pdf (last accessed May 11, 2023).
    [23] *Id.*
    [24] *Public Health Statement for Cadmium*, Agency for Toxic Substances and Disease Registry, available at https://wwwn.cdc.gov/TSP/PHS/PHS.aspx?phsid=46&toxid=15 (last accessed May 11, 2023).
    [25] Stephen J. Genius et al., *Toxic Element Contamination of Natural Health Products and Pharmaceutical Preparations*, PLOS ONE, Nov. 21, 2012, available at https://doi.org/10.1371/journal.pone.0049676 (last accessed May 11, 2023).

AMENDED CLASS ACTION COMPLAINT

contains or has a material risk of containing undisclosed levels of Heavy Metals, which is material information to reasonable consumers and Plaintiff.

72.    Defendant wrongfully failed to disclose to reasonable consumers material information regarding the presence of (or material risk of) Heavy Metals in the Product.

73.    Due to the Omissions, reasonable consumers, like Plaintiff, would not suspect the presence of Heavy Metals in the Product.  Unlike Defendant, reasonable consumers are not able to independently detect the presence of Heavy Metals in the Product and are generally without the means to conduct their own scientific tests or to review scientific testing conducted on the Product.  Moreover, information regarding the presence of Heavy Metals in the Product is in the exclusive possession of Defendant and not available to consumers.  Defendant chose to not disclose such information to consumers and thus actively concealed the presence and risk of Heavy Metals in the Product.

74.    Reasonable consumers must and do rely on Defendant to honestly report what its Product contains.

75.    Based on the impression created by the failure to disclose the Heavy Metals on the packaging, no reasonable consumer would expect, suspect, or understand that the Product contained or had a material risk of containing Heavy Metals.

76.    Defendant knew or should have known the Product contained or had a material risk of containing Heavy Metals.

77.    Defendant had a duty to ensure the Product was not deceptively, misleadingly, unfairly, and falsely marketed and that all material information was properly and fully disclosed.

78.    Defendant acted negligently, recklessly, unfairly, and/or intentionally with its deceptive packaging based on the material Omissions.

AMENDED CLASS ACTION COMPLAINT

79.     Defendant knew that properly and sufficiently monitoring the Product for Heavy Metals in the ingredients and finished products was critical.

80.     In addition, Defendant knew or should have known that a reasonable consumer would consume the Product, leading to repeated exposure to and accumulation of Heavy Metals.

81.     Defendant knew or should have known it could control the levels of Heavy Metals in the Product by properly monitoring and testing for Heavy Metals at ingredient sourcing, manufacturing, and packaging stages, and effecting changes when needed.

82.     The Omissions are material and reasonably likely to deceive reasonable consumers in their purchasing decisions, such as Plaintiff.

83.     The Omissions make the Product's packaging deceptive based on the presence or risk of Heavy Metals in the Product.   Reasonable consumers, like Plaintiff, would consider the presence or risk of Heavy Metals in the Product a material fact when considering which rice products to purchase.

84.     Defendant knew, yet failed to disclose, that it was not sufficiently or adequately monitoring or testing the Product or ingredients used in the Product for Heavy Metals.

85.     The Omissions were misleading due to Defendant's failure to sufficiently or adequately monitor or test for and disclose the presence (or material risk) of Heavy Metals in the Product.

86.     Defendant knew or should have known that the Product contained or may have contained undisclosed levels of Heavy Metals that were not disclosed on the packaging.

87.     Defendant knew or should have known that reasonable consumers expected Defendant to sufficiently monitor and test the Product and ingredients for Heavy Metals to ensure the quality of the Product.

88. Defendant knew or should have known that reasonable consumers paid higher prices for the Product and expected Defendant to sufficiently test and monitor the Product and ingredients for the presence of Heavy Metals.

89. The Omissions were intended to and did, in fact, cause consumers like Plaintiff and the members of the Class to purchase a product they would not have if the true quality and ingredients were disclosed or for which they would not have paid a premium price.

90. As a result of Defendant's Omissions, Defendant was able to generate substantial sales, which allowed Defendant to capitalize on, and reap enormous profits from, Plaintiff and similarly situated consumers who paid the purchase price or premium for the Product.

91. Plaintiff and other reasonable consumers would not have purchased the Product or would have paid less for it but for Defendant's Omissions concerning the presence (or material risk of the presence) of Heavy Metals in the Product.

**IV.    Defendant's Omissions Violate California and Other Similar State Laws**

92. California law is designed to ensure that a company's claims about its products are truthful and accurate.

93. Defendant has engaged in this long-term advertising campaign omitting the fact that the Product contains (or has a material risk of containing) Heavy Metals.

**V.    Plaintiff's Reliance Was Reasonable and Foreseeable by Defendant**

94. Plaintiff read and relied upon the packaging of the Product when making his purchasing decision. Had he known Defendant omitted and failed to disclose the presence of Heavy Metals on the Product's packaging, he would not have purchased the Product.

95. Reasonable consumers, like Plaintiff, would consider the packaging of a product when deciding whether to purchase it.

## VI. Defendant's Knowledge and Notice of Its Breach of Implied Warranties

96. Defendant had sufficient notice of its breach of implied warranties. Defendant has, and had, exclusive knowledge of the physical and chemical make-up of the Product. Defendant also had exclusive knowledge of its suppliers, and whether any suppliers provided ingredients that contained Heavy Metals.

97. Defendant has not changed its packaging to include any disclaimer that the Product contains (or are at the risk of containing) Heavy Metals.

## VII. Privity Exists with Plaintiff and the Proposed Class

98. Defendant knew that reasonable consumers such as Plaintiff and the proposed members of the Class would be the end purchasers of the Product and the targets of its advertising.

99. Defendant intended that the packaging and implied warranties would be considered by the end purchasers of the Product, including Plaintiff and the proposed members of the Class.

100. Defendant directly marketed to Plaintiff and the proposed Class through the Product's packaging.

101. Plaintiff and the proposed members of the Class are the intended beneficiaries of the implied warranties.

## CLASS ACTION ALLEGATIONS

102. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of himself and all others similarly situated, as members of the following class against Defendant:

> All persons who, during the fullest period allowed by law, purchased the Product for household use, and not for resale (the "Class").

> All persons who, during the fullest period allowed by law, purchased the Product for household use, and not for resale in the State of California (the "California Subclass").

103. Excluded from the Class and Subclass (collectively, "Class") are Defendant, any of Defendant's parent companies, subsidiaries and/or affiliates,

officers, directors, legal representatives, employees, or co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

104.   This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

105.   The members of the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Class in a single action will provide substantial benefits to the parties and Court.

106.   Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

      a.   Whether Defendant owed a duty of care;

      b.   Whether Defendant owed a duty to disclose;

      c.   Whether Defendant knew or should have known that the Product contained or may contain Heavy Metals;

      d.   Whether Defendant failed to disclose that the Product contained or may contain Heavy Metals;

      e.   Whether the claims of Plaintiff and the Class serve a public benefit;

      f.   Whether Defendant's packaging is false, deceptive, and misleading based on the Omissions;

      g.   Whether the Omissions are material to a reasonable consumer;

      h.   Whether the inclusion of Heavy Metals in the Product is material to a reasonable consumer;

      i.   Whether the Omissions are likely to deceive a reasonable consumer;

      j.   Whether Defendant had knowledge that the Omissions were material and false, deceptive, and misleading;

      k.   Whether Defendant breached its duty of care;

l. Whether Defendant breached its duty to disclose;

m. Whether Defendant violated the laws of the State of California;

n. Whether Defendant breached its implied warranties;

o. Whether Defendant engaged in unfair trade practices;

p. Whether Defendant engaged in false advertising;

q. Whether Plaintiff and members of the Class are entitled to actual, statutory, treble, and punitive damages; and

r. Whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

107. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

108. Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

109. Plaintiff will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

110. Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would not be feasible for members of the Class to redress the wrongs done to them.

111. Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

112. As a result of the foregoing, class treatment is appropriate.

AMENDED CLASS ACTION COMPLAINT

### COUNT I
**Violations of The California Unfair Competition Law, California Business & Professions Code §§17200, *et seq.*, Against Defendant on Behalf of the Class, or Alternatively, the California Subclass**

113.   Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

114.   Plaintiff brings this claim individually and on behalf of the Class members against Defendant.

115.   The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.

116.   Plaintiff, the Class members, and Defendant are each a "person" under California Business & Professions Code §17201.

**Fraudulent**

117.   Defendant's failure to disclose the presence (or material risk of presence) of Heavy Metals in the Product is likely to deceive the public.

**Unlawful**

118.   As alleged herein, Defendant's failure to disclose the presence (or material risk of presence) of Heavy Metals in the Product violates at least the following laws:

- The CLRA, California Business & Professions Code §§1750, *et seq.*;
- The False Advertising Law, California Business & Professions Code §§17500, *et seq.*, and
- The Sherman Food, Drug, and Cosmetic Law, California Health & Safety Code §§109875, *et seq.*

**Unfair**

119.   Defendant committed unfair practices by selling the Product without adequate testing or screening for the Heavy Metals, which rendered the Product adulterated and misbranded.

120.   Defendant's conduct with respect to the packaging and sale of the Product is unfair because Defendant's conduct was immoral, unethical,

1  unscrupulous, or substantially injurious to consumers, and the utility of Defendant's

2  conduct, if any, does not outweigh the gravity of the harm to its victims.

3      121.  Defendant's conduct with respect to the packaging and sale of the

4  Product is also unfair because it violates public policy as declared by specific

5  constitutional, statutory, or regulatory provisions, including, but not limited to, the

6  False Advertising Law.

7      122.  Defendant's conduct with respect to the packaging and sale of the

8  Product is also unfair because the consumer injury is substantial, not outweighed by

9  benefits to consumers or competition, and not one that consumers, themselves, can

10 reasonably avoid.

11     123.  Defendant was obligated to disclose the presence of Heavy Metals in

12 the Product because:

13       a.  Defendant had exclusive knowledge of the presence of Heavy Metals

14         in the Product that was not known or reasonably accessible to Plaintiff

15         and the Class; and

16       b.  Defendant actively concealed the presence of Heavy Metals from

17         Plaintiff and the Class.

18     124.  Plaintiff and the Class members relied upon the Product's packaging

19 provided to them by Defendant when making their purchasing decisions.  Had

20 Plaintiff and the Class members known Defendant failed to disclose the presence of

21 Heavy Metals on the Product's packaging, they would not have purchased the

22 Product.

23     125.  In accordance with California Business & Professions Code §17203,

24 Plaintiff seeks an order enjoining Defendant from continuing to conduct business

25 through fraudulent or unlawful acts and practices and to commence a corrective

26 advertising campaign.

27     126.  Defendant's conduct is ongoing and continuing, such that prospective

28 injunctive relief is necessary, especially given Plaintiff's desire to purchase the

Product in the future if he can be assured that the Product is safe for consumption and does not contain Heavy Metals.

127.   On behalf of himself and the Class, Plaintiff also seeks an order for the restitution of all monies from the sale of the Product, which was unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## COUNT II
**Violation of California's False Advertising Law, California Business & Professions Code §§17500, *et seq.*, Against Defendant on Behalf of the Class, or Alternatively, the California Subclass**

128.   Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

129.   Plaintiff brings this claim individually and on behalf of the Class members against Defendant.

130.   California's False Advertising Law prohibits any statement or omission in connection with the sale of goods "which is untrue or misleading."  Cal. Bus. & Prof. Code §17500.

131.   As set forth herein, Defendant's failure to disclose the presence (or risk of presence) of Heavy Metals in the Product is likely to deceive the public.

132.   Defendant knew the Product contained undisclosed levels of Heavy Metals.  Defendant had a duty to disclose the presence of Heavy Metals, and by omitting their presence, misled consumers.

133.   Defendant knew, or reasonably should have known, that these Omissions were misleading to reasonable consumers.

134.   Had Defendant disclosed the presence (or risk of presence) of Heavy Metals in the Product or made consumers aware of its failure to disclose, Plaintiff and members of the Class would not have purchased the Product.

135.   Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase the

AMENDED CLASS ACTION COMPLAINT

Product in the future if they can be assured that the Product does not contain Heavy Metals.

136.    Plaintiff and the members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Product.

## COUNT III
### Violations of California's Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*., Against Defendant on Behalf of the Class, or Alternatively, the California Subclass

137.    Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

138.    Plaintiff brings this claim individually and on behalf of the Class members against Defendant.

139.    Plaintiff and each proposed Class member are "consumers," as that term is defined in California Civil Code §1761(d).

140.    The Product is a "good," as that term is defined in California Civil Code §1761(a).

141.    Plaintiff, the Class members, and Defendant are each a "person" as that term is defined in California Civil Code §1761(c).

142.    Plaintiff and each of the Class member's purchases of the Product constitute "transactions" as that term is defined in California Civil Code §1761(c).

143.    Defendant's conduct alleged herein violates at least the following provisions of California's Consumers Legal Remedies Act (the "CLRA"):

    a.    California Civil Code §1770(a)(5), by failing to make any mention of Heavy Metals in the Product;

    b.    California Civil Code §1770(a)(7), by knowingly, recklessly, and/or intentionally representing that the Product was of a particular standard, quality, or grade, when they were of another; and

AMENDED CLASS ACTION COMPLAINT

c. California Civil Code §1770(a)(9), by knowingly, recklessly, and/or intentionally advertising the Product with intent not to sell it as advertised.

144. The Omissions were material as reasonable consumers such as Plaintiff and the members of the Class would deem the presence of Heavy Metals important in determining whether to purchase the Product.

145. Defendant was obligated to disclose the presence of Heavy Metals in the Product because:

a. Defendant had exclusive knowledge of the presence of Heavy Metals in the Product, which was not known or reasonably accessible to Plaintiff and the members of the Class; and

b. Defendant actively concealed the presence of Heavy Metals from Plaintiff and the members of the Class.

146. As a direct and proximate result of these violations, Plaintiff and the Class members have been harmed, and such harm will continue unless and until Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Product.

147. On June 17, 2025, counsel for Plaintiff and the Class members sent written notice (*via* U.S. certified mail, return receipt requested) that its conduct is in violation of the CLRA. Defendant failed to provide appropriate relief for its violations of the CLRA §§1770(a)(5), (7), and (9) within thirty days of receipt of Plaintiff's notification. Therefore, Plaintiff now seeks damages and other monetary relief, including, but not limited to, statutory damages, punitive damages, attorney's fees and cost and any other relief that the Court deems proper.

**COUNT IV**
**Breach of Implied Warranty of Merchantability Against Defendant on Behalf of the Class or, Alternatively, the State Subclass**

148. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

AMENDED CLASS ACTION COMPLAINT

149.   Plaintiff brings this claim individually and on behalf of the Class members against Defendant.

150.   Defendant is a merchant engaging in the sale of goods to Plaintiff and the members of the Class.

151.   There was a sale of goods from Defendant to Plaintiff and the members of the Class.

152.   As set forth herein, Defendant manufactured and sold the Product, and prior to the time the Product was purchased by Plaintiff and the members of the Class, impliedly warranted that the Product were of merchantable quality and fit for their ordinary use (consumption by consumers).

153.   Plaintiff relied on these implied warranties when he purchased the Product.

154.   The Product was not fit for its ordinary use (consumption by consumers) as they include undisclosed levels of Heavy Metals that do not conform to the packaging.

155.   These promises became part of the basis of the bargain between Defendant and Plaintiff and the members of the Class, and thus constituted implied warranties.

156.   Defendant breached its implied warranties by selling Product that contain Heavy Metals.

157.   Privity exists because Defendant manufactured and sold the Product directly to Plaintiff and the members of the Class.

158.   Defendant impliedly warranted to Plaintiff and the members of the Class that the Product did not contain contaminants such as Heavy Metals by failing to mention or disclose the presence of Heavy Metals.

159.   As a direct and proximate result of Defendant's breach of its implied warranties, Plaintiff and the members of the Class suffered actual damages as they

AMENDED CLASS ACTION COMPLAINT

purchased the Product that was worth less than the price paid and that they would not have purchased at all had they known of the presence of Heavy Metals.

160.   Plaintiff, on behalf of himself and the members of the Class, seek actual damages for Defendant's failure to deliver goods that conform to its implied warranties and resulting breach.

<u>**COUNT V**</u>
**Unjust Enrichment Against Defendant on Behalf of the Class or, Alternatively, the State Subclass**

161.   Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

162.   Plaintiff brings this claim individually and on behalf of the Class members against Defendant.

163.   Substantial benefits have been conferred on Defendant by Plaintiff and the members of the Class through the purchase of the Product.  Defendant knowingly and willingly accepted and enjoyed these benefits.

164.   Defendant either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Product would not contain Heavy Metals.  As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

165.   Defendant was obligated to disclose the presence of Heavy Metals in the Product because:

    a.   Defendant had exclusive knowledge of the presence of Heavy Metals in the Product that were not known or reasonably accessible to Plaintiff and the members of the Class; and

    b.   Defendant actively concealed the presence of Heavy Metals from Plaintiff and the members of the Class.

166.   Defendant's acceptance and retention of the benefits of the payments from Plaintiff and the members of the Class under the circumstances alleged herein

AMENDED CLASS ACTION COMPLAINT

make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiff and the members of the Class.

167.    Plaintiff and the members of the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

168.    Plaintiff and the members of the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, pray for judgment against Defendant as to each and every count, including:

(a)    An order declaring this action to be a proper class action, appointing Plaintiff and his counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

(b)    An order enjoining Defendant from selling the Product until the Heavy Metals are removed or full disclosure of the presence of same appears on all packaging;

(c)    An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing Product;

(d)    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

(e)    An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or

AMENDED CLASS ACTION COMPLAINT

misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

(f)    An order requiring Defendant to disgorge or return all moneys, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

(g)    An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein, in an amount to be determined by this Court, but at least $5,000,000;

(h)    An order requiring Defendant to pay punitive damages on any count so allowable;

(i)    An order awarding attorneys' fees and costs to Plaintiff and the Class; and

(j)    An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims so triable.

Dated: August 21, 2025        /s/ Trenton Kashima
                              Trenton Kashima (CA SBN No. 291405)
                              **MILBERG COLEMAN BRYSON**
                              **PHILLIPS GROSSMAN PLLC**
                              402 West Broadway St., Suite 1760
                              San Diego, CA 92101
                              Tel: (619) 810-7047
                              tkashima@milberg.com

                              **MILBERG COLEMAN BRYSON**
                              **PHILLIPS GROSSMAN, PLLC**
                              Nick Suciu*
                              6905 Telegraph Road, Suite 115
                              Bloomfield Hills, MI 48301
                              Telephone: (313) 303-3472
                              E-mail: nsuciu@milberg.com

                              *Pro hac vice forthcoming

AMENDED CLASS ACTION COMPLAINT