Willis M. Wagner (SBN 310900)
Sean A. Newland (SBN 300928)
Rocco Pallin (SBN 360385)
GREENBERG TRAURIG, LLP
400 Capitol Mall, Suite 2400
Sacramento, CA 95814
Telephone: (916) 442-1111
Facsimile: (916) 448-1709
will.wagner@gtlaw.com
sean.newland@gtlaw.com
rocco.pallin@gtlaw.com

Attorneys for Defendant
RIVIANA FOODS INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERETT SCOTT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RIVIANA FOODS, INC.,<br><br>Defendant. | Case No. 1:25-cv-00735-JLT-CDB<br><br>**DEFENDANT RIVIANA FOODS INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:       December 2, 2025<br>Time:       9:00 a.m.<br>Courtroom: 4, 7th Floor<br><br>Trial Date: None Set |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................3

II. REPLY ARGUMENT .........................................................................................................3

    A. Riviana Has No Duty to Disclose Trace Levels of Heavy Metals in the Product. ............3

        1. Plaintiff Fails to Plead Materiality. ...............................................................................3
        2. The Alleged Levels of Heavy Metals are Not Central to the Product's Function. ......6
        3. No LiMandri Factor is Satisfied. ...................................................................................8
        4. The Alleged Defect Does Not Pose an Unreasonable Safety Hazard. ..........................9

    B. Plaintiff's Claim for Breach of Implied Warranty of Merchantability Fails. ..................10

        1. The Product Conforms to the Trade Standard. ...........................................................10
        2. The Product is Fit for its Ordinary Purpose. ..............................................................11
        3. The Product is Adequately Labeled and Conforms to all Promises Made. ...............12

    C. Plaintiff's Claim for Unjust Enrichment Fails. ................................................................12

III. CONCLUSION ..................................................................................................................12

## I. INTRODUCTION

Plaintiff Everett Scott's Opposition to Defendant's Motion to Dismiss makes clear that he wants to extend case law on omission claims for naturally occurring trace metals in food in an unjustified and problematic way.  Throughout it, Plaintiff muddles the test for an actionable omission, mixing arguments and case law for materiality, central functionality, and unreasonable safety hazard in a way that does not comport with the California authority he cites.  Critically, the Opposition does nothing to show how the allegations in the First Amended Complaint ("FAC") are plausible, much less pleaded with particularity as required by Federal Rule of Civil Procedure 9(b), which applies to Plaintiff's omission claims.

At bottom, the FAC and Opposition fail to demonstrate materiality, as Plaintiff fails to identify a relevant standard the Product's alleged heavy metals exceed.  Denying Defendant's Motion will set the troubling precedent that any heavy metal levels in commodities create actionable class action claims.

## II. REPLY ARGUMENT

### A. Riviana Has No Duty to Disclose Trace Levels of Heavy Metals in the Product.

Plaintiff has two paths to show Riviana had a duty to disclose the trace levels of heavy metals in the Product: show that (1) the alleged defect is material and central to the Product's function, and satisfy a *LiMandri* factor, or (2) the Product poses an unreasonable safety hazard.  *Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1210 (S.D. Cal. 2023) (citation omitted).  The FAC makes neither showing, and the Opposition does not rehabilitate that failure.  Instead, it stretches the seams of omissions case law to their tear point and spins its wheels on irrelevant issues.  The FAC must be dismissed.

#### 1. *Plaintiff Fails to Plead Materiality.*

The FAC fails to legitimately explain why the presence (or risk) of heavy metals in the Product is material, and the Opposition provides no reason for a different conclusion.

**<u>First</u>**, *Plaintiff* relies on Proposition 65's safe harbor levels to argue the levels of inorganic arsenic and cadmium allegedly in the Product are material and require disclosure.  FAC ¶ 30.  Even at the average daily consumption rate Plaintiff alleges (33% more than the Product's serving size), the Product *does not exceed* Proposition 65 safe harbor levels.  *See* Mot. 13:18-15:13.  As detailed in the Motion, Plaintiff's suggestion that exposures to inorganic arsenic and cadmium from other sources put the daily exposure over Proposition 65 safe harbors levels is nonsensical and contrary to the law.  Prop 65 safe harbor limits

are measured against exposure *from the product*, not total exposure in a given day.  Mot. 15:14-16:16; *see also* 27 CCR § 25721(a) (stating that when conducting an exposure analysis against safe harbor levels, "[t]he exposure in question includes the exposure for which the person in the course of doing business is responsible, and does not include exposure to a listed chemical from any other source or product.").

Further, Plaintiff's reliance on Proposition 65 seeks to reopen a settled issue.  A consent judgment for rice was entered in 2018 and set limits of 500 parts per billion for inorganic arsenic and 462 parts per billion for cadmium, both of which far exceed the levels alleged to be in the Product.  *See* Mot. 17:3-10.

The Opposition offers the Court conflicting stories on Plaintiff's reliance on Proposition 65.  First, Plaintiff suggests Riviana made Proposition 65 relevant here, arguing "[t]he 'Proposition 65 safe harbor thresholds' Defendant evokes throughout its Brief … apply only to *Proposition 65 claims*, which are not at issue here."  Opp. 6:10-11 (emphasis in original).  That position ignores the FAC's use of Proposition 65 as a measuring stick for materiality, and it is contradicted by the *Opposition's* later comparison of the reported levels in *basmati* rice (i.e., *not* the Product) to Proposition 65's cadmium and inorganic arsenic thresholds.  *See* Opp. 9:22-28.  Plaintiff cannot have it both ways.  He cannot claim Proposition 65 is irrelevant and then use it as the baseline measurement to assert the Product contains "high levels" of heavy metals.  In short, Riviana does not argue Plaintiff brings a Proposition 65 claim.  Rather, the Motion discusses Proposition 65 to debunk the FAC's flawed comparison to its thresholds to establish materiality.

**<u>Second</u>**, Plaintiff cites FDA and EPA drinking water limits for inorganic arsenic of 10 parts per billion and limits for inorganic arsenic in infant cereals but does not explain how any of these limits apply to the Product.  The comparison to drinking water is particularly problematic because that level assumes the consumption of large volumes of water daily and over a consumer's lifetime, and thus a much larger exposure than an occasional serving of the Product.  Mot. 17:21-18:3.  Even at those significant exposure levels, only "[*s]ome* people who drink water containing arsenic in excess of EPA's standard over many years *could* experience skin damage or problems with their circulatory system, and *may* have an increased risk of getting cancer."  *Id.* (quoting "Arsenic in your Drinking Water - Just the Facts for Consumers").

The Opposition abandons this as a yardstick for materiality.  Instead, apparently, they are merely "examples of food and drink that regulators have felt the impetus to put a limit on."  Opp. 8:14-21.

4

***Third***, Plaintiff creates the illusion that the Product's heavy metal levels are materially different from other *brown* rice products by comparison to the average levels in *all* rice. This is obviously an irrelevant comparison since U.S.-grown varieties of rice in their *brown* form is the rice the HBBF Report found was highest in heavy metals. Mot. 12:15-24. The Product samples were around the median of the 11 brown rice brands the HBBF Report tested, and virtually all rice *naturally* contains these compounds, such that testing confirming that fact cannot be material to a reasonable consumer. Mot. 12:24-13:3.

The Opposition doubles down on this comparison theory but in the process makes a fatal analogy that cuts to the heart of why the FAC fails to plausibly plead materiality. Plaintiff argues Riviana shows "its competitors are also guilty," s*ee* Opp. 5:10-12, characterizing Riviana's position as "but officer, that other car was also speeding." But Plaintiff fails to recognize that there are no speeding violations without exceedance of a speed limit, and contrary to the Opposition's claim, the FAC fails to show an exceedance of the thresholds discussed above and provides no other "yardsticks to measure the unreasonableness of the levels of heavy metals in the Product." *See* Opp. 7:14-21. Instead, the FAC "detail[s] the health risks associated with [] elevated levels of arsenic and cadmium" but does *nothing* to show what an "elevated" level is. Opp. 15:12-13; *see also id.* 15:26-28 ("Plaintiff devotes twenty-six paragraphs of his Complaint to detail the health risks *posed by the levels of inorganic arsenic and cadmium in the Product*, backed up by news reporting and primary sources."). The FAC merely shows: (1) U.S. regulatory authorities are well aware that there are heavy metals in rice but have declined to set regulatory limits; and (2) the alleged levels of heavy metals in the Product fall below the very conservative levels established under the only applicable law in the U.S. (Proposition 65), which merely requires a warning if thresholds are exceeded.

The Opposition accuses Riviana of "willfully ignor[ing]" the scientific evidence. Not so. Riviana simply recognizes the pleading standard and does not engage in premature scientific argument in the Motion. Rather, the Motion takes those many paragraphs for what they are worth: an indication that inorganic arsenic and cadmium exposure may be harmful *at some heightened level of exposure.* Plaintiff's argument fails because he does not show that the levels in the Products are even remotely near that undefined point, or that they exceed *any* relevant standard that could plausibly suggest a risk of harm, including Proposition 65, which sets its *extremely* precautionary warning levels. *See* Mot. 14:3-9.

Nor does analogizing to *Boyd v. SunButter* help his cause. *See* Opp. 9:14-20 (citing 762 F. Supp.

5

3d 931 (C.D. Cal. 2025)). *Boyd* is plainly distinguishable. The *Boyd* plaintiffs alleged heavy metals at levels more than four times Prop 65 thresholds, that also "far exceed[ed]" both the levels in competitor products and U.S. health standards. *Id.* at 938, 949. Plaintiff here has none of those facts to support him, as the levels he alleges are well within Proposition 65's limits and around the median of other brown rice products tested, and he identifies no applicable safety standards those levels exceed (because none exist).

**_Fourth_**, the Opposition insists Plaintiff "is not suing for *any* level of heavy metals" but rather, "in clear and repeated allegations, is suing for *elevated* levels of inorganic arsenic and cadmium." Opp. 8:3-5; 15:9-12. But in fact, the FAC rarely alleges the heavy metals alleged are "high" or "harmful." Instead, the FAC refers to "the presence of arsenic and cadmium," "the presence (or material risk of presence) of Heavy Metals in the Product," or "undisclosed levels of Heavy Metals," i.e., in terms showing Plaintiff's issue is with *any* heavy metals. *See, e.g.*, FAC ¶¶ 31, 47, 48, 118, 132; *see also* FAC ¶ 86 ("the Product contained or may have contained undisclosed levels of Heavy Metals"). Only twice does the FAC assume and label those levels "unsafe." *Id.* ¶¶ 30, 34. At bottom, the FAC not only fails to support its allegations that the alleged levels are harmful, but it does not even consistently plead Plaintiff's issue is with levels of heavy metals that are "elevated" rather than with *any* heavy metals, as the Opposition asserts.

Buried in his Opposition, Plaintiff admits his real materiality theory: "[a]t bottom, Plaintiff pleads that he would not purchase, or would have paid less, if he had known about the elevated levels of heavy metals at issue. *This is sufficient to plead materiality*." Opp. 11:1-3 (emphasis added). Plaintiff is wrong. Alleging *he* would not have purchased the Product had *he* known of the alleged heavy metals is wholly insufficient to satisfy the reasonable consumer standard. *See* Mot. 13:4-5. Such a standard would mean that any level of heavy metals in any food products can turn into a class action lawsuit.

The FAC does not sufficiently allege materiality, and the Opposition does nothing to change that deficiency. Accordingly, the Court needn't even consider the central function or *LiMandri* factors to find that Plaintiff's allegations fail to satisfy this first route to establish an actionable omission claim.

**2.     *The Alleged Levels of Heavy Metals are Not Central to the Product's Function.***

To satisfy the "central function" prong, Plaintiff must show under Rule 9(b)'s heightened pleading standard that the heavy metals render the Product "incapable of use by any consumer." *In re Theos*, No. 23-cv-02739-HSG, 2024 WL 4336631, at *11 (N.D. Cal. Sept. 27, 2024). The problem Plaintiff faces is

that courts consistently find heavy metals in foods ***do not impede*** their central function to provide calories and nutrients. *Id.*; Mot. 18:15-19-22. Plaintiff does not allege that the Product is incapable of use by any consumer, he alleges it is not "safe and pure." FAC ¶ 43. That is not the standard. Accordingly, Plaintiff fails to satisfy the "central function" element, a threshold element of an omission claim under this test.

The Opposition suggests *Rodriguez v. Mondelez Glob. LLC* supports Plaintiff's "central function" position, *see* Opp. 11:10-13, but *Rodriguez* does not help him. In *Rodriguez*, the plaintiff only attempted to allege heavy metals were an "unreasonable safety hazard." *See* 703 F. Supp. 3d at 1210. The court did not consider whether heavy metals affect a product's "central function."

The Opposition also erroneously argues that the on-point cases discussed in the Motion "deal with 'trace' levels of heavy metals and are thus unavailing."[1] *See* Opp. 11:14-21. In reality, Plaintiff's claims are substantially *weaker* than the claims in those cases. In *Hayden v. Bob's Red Mill Natural Foods, Inc.*, for example, the court found that alleging heavy metal levels *above* the Proposition 65 safe harbor level did not show an effect on a product's central function. No. 23-cv-03862-HSG, 2024 WL 1643696, *10 (N.D. Cal. Apr. 16, 2024). The same is true of *In re Theos*, where the alleged levels again exceeded the Proposition 65 safe harbor, yet the court found no effect on central function. 750 F. Supp. 3d at 1078. Contrasted with Plaintiff's position that heavy metal levels *below* the Proposition 65 thresholds affect the Product's central function, it is obvious that Plaintiff has failed to plausibly allege the arsenic and cadmium affect the Product's central function.

The Opposition relies on the notion that the Product's alleged levels of heavy metals are "high," "toxic," or "dangerous." *See* Opp. 11:21-26; *supra* n.1. But aside from *Rodriguez*, which did not consider the "central function" question, Plaintiff cites no authority to suggest the clickbait labels he has attached to the Product, with no anchor to a relevant standard, have any bearing on the question. Because they do not. The alleged presence or risk of arsenic and cadmium is not central to the Product's function as rice.

---

[1] The Opposition makes much of the Motion's characterization of the levels of alleged heavy metals as "trace." But as the Opposition makes clear, any label applied to the Product's alleged levels—"trace," "elevated," "high," or any other adjective—is a subjective and unimportant characterization. This Reply therefore does not give attention to this distraction tactic—except to note that courts in the Ninth Circuit have defined levels of heavy metal in foods as "trace" even when they exceed Proposition 65 thresholds, which the Product's alleged levels do not. *See In re Theos*, 750 F. Supp. 3d at 1078; Mot. 13:18-17:10.

So, Plaintiff's omission claim fails for failure to plead those levels affect the Product's central function.

### 3. *No LiMandri Factor is Satisfied.*

The FAC's *LiMandri* arguments are that Riviana had "exclusive knowledge of material facts not known" to and "actively conceal[ed] a material fact from" Plaintiff. *See* FAC ¶ 73. The Motion explains in great detail why neither argument is even remotely true. *See* Mot. 19:24-22:12.

As for *exclusive knowledge of material facts*, Plaintiff, and the public, have had access to a wealth of information from which to know of the ubiquity of heavy metals in brown rice. The one limiting factor has been *Plaintiff's* interest in viewing it. Indeed, even if Riviana had *different* knowledge than Plaintiff, e.g., of the precise levels of heavy metals, which Riviana does not concede, Riviana's knowledge of the *presence* of heavy metals was not exclusive. Countless public sources going back decades (including news reports, scientific articles, blogs, public reports from federal agencies, and Riviana's *own website*) alert consumers to the presence of heavy metals in rice. *See* Mot. 21:8-24. For example, the FDA issued a report in *2013* showing 99 samples of brown rice were tested and returned an average inorganic arsenic ug/serving level of 7.2 or 0.22 *above* the HBBF Report levels. *See* Mot. 17:11-20. Yet Plaintiff asks the Court to find levels below that constitute "material facts" of which Riviana had "exclusive knowledge."

The Opposition offers no authority for the proposition that a defendant has "exclusive knowledge" when it has *different* knowledge of a defect and the plaintiff cannot readily ascertain *that* knowledge but could (and should) be readily aware of the defect. But that is what Plaintiff argues this Court should find.

Instead, the Opposition cites federal Good Manufacturing Practices in 21 C.F.R. §§ 117.130-135 to try and distract from and argue around the Motion's showing that it has been publicly known for many years that rice contains heavy metals (including by the FDA, which had data showing levels at or around those reported for the Product in the HBBF Report over a decade ago but took no action). *See* Mot. 21:8-24. The GMPs do not aid Plaintiff's argument. Even if Riviana had complied with the requirements that the Opposition argues it did not, the result would only be that Riviana would have additional test results. This obviously does nothing to show *exclusive* knowledge, and it even fails to show different knowledge to the extent the levels of metals would be consistent with publicly available data. The Opposition's reliance on the GMPs is a mere distraction from Plaintiff's inability to establish exclusive knowledge.

Moreover, the *FAC* does not allege a violation of the GMPs. It says Riviana "has an obligation

to control and test for known or reasonably foreseeable hazards, such as natural toxins." FAC ¶ 31, n.7. It does not claim Riviana does not test or control natural toxins, or even allege to what level they must be controlled. Nothing in the FAC supports finding that the GMPs apply to heavy metals in rice, as Riviana merely processes and packages the raw product (21 C.F.R. 135's "preventive control" requirements apply to hazards added during food processing). The FAC and Opposition simply assume without basis that finding trace levels of heavy metals means the GMPs were violated.

Plaintiff also fails to plead any *active concealment of material facts*. Active concealment requires "affirmative acts" of concealment. *See* Mot. 21:25-28. Mere nondisclosure is not "active concealment." *Edwards v. FCA US LLC*, No. 22-cv-01871-WHO, 2022 WL 1814144, at *4 (N.D. Cal. June 2, 2022). The FAC fails to allege Riviana actively covered up the alleged presence of heavy metals in the Product. To the contrary, Riviana's website disclosure of the presence of heavy metals decidedly refutes any active concealment argument. *See In re Plum Baby Food Litig.*, No. 24-2766, 2025 WL 1200700, at *2 (9th Cir. Apr. 25, 2025) (no active concealment where defendant "acknowledged on its own website that its products contain detectable levels of heavy metals"). Plaintiff again inappropriately cites the GMPs to imply Riviana must alert consumers of the levels of heavy metals in the Product. Opp. 14:27-15:2 (saying Plaintiff is alleging "that Defendant actively concealed information it was required by law to disclose"). The GMPs make no such requirement. The Court need only refer to the cases the Motion cites that directly support the finding that Riviana engaged in no active concealment. *See* Mot. 21:25-22:12. The Opposition has no response and offers no reason to find active concealment.

To establish an omission under this first test, the FAC had to establish that the defect is material, central to the Product's function, and that a *LiMandri* factor is met. Plaintiff failed all three requirements.

### 4. *The Alleged Defect Does Not Pose an Unreasonable Safety Hazard.*

Plaintiff's FAC also fails to establish an omission by alleging an unreasonable safety hazard. *See* Mot. 22:25-23:25. Importantly, even in cases in which the alleged heavy metal levels exceeded the only applicable regulation, i.e., Proposition 65, courts repeatedly find the levels do not create an unreasonable safety hazard. *See, e.g., Hayden*, 2024 WL 1643696, at *9. Plaintiff simply fails to provide a "connection between the general harms possible from Heavy Metals and the levels of Heavy Metals in [the] Products." *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1170 (S.D. Cal. 2024). "[A]lleging

that Heavy Metals can pose human health risks at some unidentified level does not mean the levels in these Products pose a human health risk, particularly not one great enough to constitute an unreasonable safety hazard." *See id.* Pleading that there are risks at some unidentified level is *all* that the FAC alleges.

The Opposition relies on *Miller v. Philips North America*, but its facts are entirely distinguishable. In *Miller*, the plaintiff pleaded an unreasonable safety hazard by alleging that the microplastics exposure from the product's defect alone was "'2,600 times higher than the total daily consumption of microplastics for adults from water, food, and air combined.'" No. 24-cv-03781-RFL, 2025 WL 582160, at *3 (N.D. Cal. Feb. 20, 2025). The court reasoned that plaintiff's evidence of these "extraordinarily high levels" of microplastics leached by this product intended for use by infants multiple times each day was plausibly connected to harm infants could suffer and thus was an unreasonable safety hazard. *Id.* But Plaintiff here entirely fails to provide a plausible connection or any specifics about why the alleged levels, which U.S. regulators have been aware of for decades yet have declined to act on and fall far below the only applicable threshold for heavy metals in the Product,[2] are an unreasonable safety hazard to consumers.

Plaintiff's reliance on *In re Baby Food Products* is also unhelpful. That complaint alleged only strict products liability and negligence claims, as well as actual harm (i.e., development of autism and ADHD). No. 24-MD-03101-JSC, 2025 WL 986959, at *1 (N.D. Cal. Apr. 2, 2025).

The final case on which Plaintiff relies for his unreasonable safety hazard analysis, *Rodriguez*, <u>granted</u> defendant's motion to dismiss because the plaintiffs failed to allege the safety hazard was *unreasonable*. *See* 703 F. Supp. 3d at 1210. Similarly, here, nowhere does the FAC attempt to allege an "unreasonable" safety hazard, much less provide any support for such an assertion.

As the Motion makes utterly clear, the FAC did not adequately plead that the alleged heavy metals in the Product create an unreasonable safety hazard. Plaintiff's omission claim fails on this ground, too.

### B. **Plaintiff's Claim for Breach of Implied Warranty of Merchantability Fails.**

#### 1. *The Product Conforms to the Trade Standard.*

Conclusory allegations that a product "would not pass without objection in the trade or industry"

---

[2] The alleged levels in the Product are a small fraction of the levels set by the Proposition 65 Consent Judgment for rice. Mot. 17:3-10; *see also In re Theos Dark Chocolate Litig.*, 750 F. Supp. 3d 1069, 1090 (N.D. Cal. 2024) (where a Consent Judgment set new thresholds, and plaintiffs failed to show levels of heavy metals more than those thresholds, plaintiffs did not establish an "unreasonable safety hazard").

do not plausibly state an implied warranty claim. *See* Mot. 25:25-27. But conclusory allegations that the Product's heavy metal content is different than other brands are all that Plaintiff provides. *See, e.g.,* FAC ¶ 11 (alleging the Product's levels are "much higher than the average" in competitor products). However, the FAC misuses the HBBF Report by comparing the Product's purported results to the average across *all types* of rice. Appropriately compared to the *brown rice* brands the HBBF Report tested, the Product's alleged levels of arsenic and cadmium were around the median. *See* Mot. 12:24-13:1. The FAC offers nothing but this improper comparison to suggest that the Product does not conform to the trade standard.

Plaintiff has provided nothing to show "that the Products are any different from other products in the market or would otherwise be objected to in the trade or industry." *See Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 804 (N.D. Cal. 2024). Rather, the Motion and the HBBF Report make clear that arsenic and cadmium are common in rice (particularly brown rice) and that regulatory authorities are well aware of this problem, yet *no* action has been taken, for example, to require the industry to warn consumers or remove products from shelves. Accordingly, Riviana has not breached the implied warranty by failing to conform to the trade standard.

### 2.   *The Product is Fit for its Ordinary Purpose.*

The FAC also fails to show that the product "did not possess even the most basic degree of fitness for ordinary use." *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) (quotations omitted). The FAC just states conclusory allegations that "[t]he Product was not fit for its ordinary use (consumption by consumers) as they include undisclosed levels of Heavy Metals." Mot. 26:19-21 (citing FAC ¶ 154). The Opposition, noting "the Basmati Rice is unsafe to eat" (the Product here is brown whole grain rice), does nothing to show Plaintiff's allegations suffice. Plaintiff's reliance on *Boyd* is misplaced, because the FAC fails to show the Product cannot be safely consumed. Opp. 17:17-20. Unlike in *Boyd*, Plaintiff has alleged levels of heavy metals well within the only applicable limit established by regulators; in *Boyd*, the alleged levels were more than four times the applicable MADL. *See* 762 F. Supp. 3d 938.

"In cases involving human food, a party can plead that a product violates the implied warranty of merchantability through allegations that the product was unsafe for consumption." *Grausz v. Hershey Co.*, 691 F. Supp. 3d 1178, 1196 (S.D. Cal. 2023). But conclusory allegations will not suffice. *See id; see also Krystofiak*, 737 F. Supp. 3d at 804; *In re Theos*, 750 F. Supp. 3d at 1093. A plaintiff who "fails

11
DEFENDANT RIVIANA FOODS INC.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

to allege that the level of [heavy metals] allegedly present in [products] constitute[s] a level at which the complained-of health risks occur" fails to plausibly plead a product is unsafe for consumption and cannot maintain an implied warranty claim. *Hayden*, 2024 WL 1643696, at *10. As explained above, the FAC makes no more than conclusory allegations that the Product is unsafe to consume due to its alleged heavy metals. The Product is fit for consumption, as Plaintiff himself allegedly purchased and consumed it without incident. It was only after he read an online report about the alleged heavy metals that he filed this lawsuit. Without more, his implied warranty claim based on fitness for ordinary purpose fails too.

### 3. *The Product is Adequately Labeled and Conforms to all Promises Made.*

Plaintiff's conclusory claim that the alleged presence of heavy metals "do[es] not conform to the packaging" is insufficient to allege a breach of warranty. Mot. IV.B.3. The Opposition concedes Plaintiff is not alleging a breach of warranty on the grounds that the Product does not conform to its label.

### C.    Plaintiff's Claim for Unjust Enrichment Fails.

An unjust enrichment claim cannot survive when it is tethered to a failed consumer protection claim. *See* Mot. 27:9-28. Plaintiff's unjust enrichment claim is entirely reliant on his failed allegations that Riviana violated consumer protection or warranty laws and therefore cannot stand. *See, e.g., Lopez v. Mead Johnson Nutrition Co.*, No. 24-cv-03573-HSG, 2025 WL 895213, at *12 (N.D. Cal. Mar. 24, 2025) (an unjust enrichment claim that "rises and falls with the other faulty claims" asserted must fail).

The Opposition argues Plaintiff's unjust enrichment claim should stand if his other claims do not.[3] This is illogical because Riviana's enrichment is only unjust if it violated the laws Plaintiff claims it did. Plaintiff's unjust enrichment claim fails because it is predicated on his omission claims. The Opposition cites cases supporting the general proposition that unjust enrichment can be a standalone claim. None support the argument that a claim can exist without any underlying sufficiently pleaded allegations to support it, as here. *See* Opp. 18:16-27. As such, Plaintiff's unjust enrichment claim also must fail.

### III.   CONCLUSION

For the foregoing reasons and based on the authorities discussed, this Court should dismiss Plaintiff's FAC in its entirety without leave to amend.

---

[3] The Opposition incorrectly represents that the Motion cites a Seventh Circuit case. *See* Opp. 18:13-16.

| | |
|---|---|
| Dated: October 30, 2025 | GREENBERG TAURIG, LLP |

                                         By: */s/ Willis M. Wagner*
                                                   Willis M. Wagner
                                                   Sean A. Newland
                                                   Rocco Pallin

                                                   *Attorneys for Defendant*
                                                   RIVIANA FOODS INC.

DEFENDANT RIVIANA FOODS INC.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT